**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────────

**TARA BUNNENBERG,**

                         **Plaintiff,**

        **v.**                                            **1:22-CV-1174**

**LIBERTY MUTUAL FIRE INSURANCE**
**COMPANY,**

                         **Defendant.**
───────────────────────────────────

**Hon. Mae A. D'Agostino,**
**United States District Judge[1]**


**DECISION & ORDER**

## I.  INTRODUCTION

This action was originally commenced in Albany County Supreme Court seeking to enforce a $350,000 Consent Judgment obtained by Plaintiff Tara Bunnenberg ("Bunnenberg" or "Plaintiff") against Defendant Liberty Mutual Fire Insurance Company's ("Defendant" or "Liberty") insured, Lauren McCormack ("Lauren" or "McCormack"). ECF 2. The underlying incident stems from an October 26, 2011, physical altercation at SUNY Maritime College between Plaintiff and McCormack which resulted in the fracture of the left orbit of Plaintiff's eye ("the Incident"). *Id.*  On November 8, 2022, the case was removed to this court based upon diversity of citizenship. ECF 1.

───────────────────────

[1] This case was originally assigned to the Hon. Thomas J McAvoy, Senior U.S. District Judge, and has been reassigned to the undersigned.

Now before the Court is Defendant's motion for summary judgment seeking to dismiss the Complaint in its entirety, *see* ECF 36, which Plaintiff opposes, *see* ECF 38, and to which Defendant files a reply. *See* ECF 44.  The Court will decide the motion based on the parties' submissions and without oral argument.  For the following reasons, the motion is denied.

## II.   BACKGROUND

As explained more fully below, following an October 26, 2011 physical altercation between Plaintiff and McCormack, Plaintiff commenced a civil action against McCormack entitled *Tara Bunnenberg v. Lauren L. McCormack*, Index No. 013612/2012, in Nassau County Supreme Court (the "Underlying Action").  In the Underlying Action, Plaintiff obtained a $350,000 Consent Judgment against Defendant's insured, Lauren McCormack. ECF  2.  In the instant action, Bunnenberg seeks to enforce the Consent Judgment against an insurance policy issued by Liberty to Lauren's parents. *See* ECF 2.

Defendant argues that Liberty's policy does not cover Lauren for the claims alleged in the Underlying Action that resulted in the Judgment.  Rather, Defendant argues, the facts show that the claims arose from the non-accidental assault and battery of Bunnenberg by Lauren.  ECF 36-19 at p. 1.  Defendant further contends that there is no coverage under Liberty's policy for these claims because (1) they do not fall within the insuring agreement of the policy in that the claims are not for injury "caused by an 'occurrence,'" as that term is defined in the Liberty's policy; and (2) coverage is completely barred by an exclusion for bodily injury "[w]hich is expected or intended by

one or more 'insureds'," and here, given the facts, Lauren expected to cause

Bunnenberg bodily injury. *Id.*

> Plaintiff counters:
>
> Application of the relevant language of the Liberty Policy to the true facts and governing law here leads to the inescapable conclusions that: (i) Bunnenberg's claims against McCormack arose out of an "occurrence" within the meaning of the Liberty Policy; (ii) the "expected or intended" exclusion relied upon by Liberty is completely irrelevant to the claims at hand and/or Liberty as a matter of law is precluded from relying upon that exclusion; and (iii) Liberty is obligated to indemnify McCormack for the Judgment which Bunnenberg obtained against her. Or, at the very least, material questions of fact which cannot be resolved upon summary judgment exist as to one or more of these issues.

ECF 38, at p. 8, ¶ 22.

### The Liberty Policy

Liberty had issued Homeowners Policy, No. H32-228-885629-000 6, with a policy

period from November 7, 2010 to November 7, 2011,[2] to Lauren's parents, James C.

McCormack and Vivian L. McCormack, as the Named Insureds (the "Liberty Policy").

*See* Brown Decl., ECF 36-1, ¶¶ 3-4;[3] Liberty Policy, Def. Ex. A, ECF 36-3.  Lauren is

an insured under the Liberty Policy. *See* Def. Ex. A, at "Definitions","3.

Insured" (Bates No. LMFIC 0766).

The Liberty Mutual Policy contains a Personal Liability insuring agreement, as

amended by endorsement, that provides:

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

---

[2] Thus, the Liberty Police was in effect on the date of the October 26, 2011 incident between Plaintiff and Lauren.

[3] Stephen Brown is a Senior Claims Resolution Specialist I for Liberty Mutual.  Brown Decl. ¶ 1.

> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

Brown Decl. ¶ 5 (quoting Def. Ex. A).  The Liberty Mutual Policy defines the term

"occurrence" as follows:

> 5. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
>
> a. "Bodily injury"; or
>
> b. "Property damage."

Brown Decl. ¶ 6 (quoting Def. Ex. A).

The Liberty Mutual Policy contains an exclusion, as amended by endorsement,

that provides:

> **1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to "bodily injury" or "property damage":
>
> * * *
>
> a. Which is expected or intended by one or more "insureds";

Brown Decl. ¶ 7 (quoting Def. Ex. A).

### The Underlying Action and Other Relevant Factual Background

On October 26, 2012, Plaintiff commenced the Underlying Action.  The

Complaint in that action alleged, *inter alia*, that, unprovoked, "McCormack intentionally

attacked, struck, battered, and bruised Bunnenberg," and "[a]s a consequence of the

assault and battery committed by McCormack upon Bunnenberg, she has suffered

severe and permanent injuries." Def. Ex. B, ECF 36-4, ¶¶ 8, 13.  Lauren was served

with the underlying Summons and Complaint on or about February 23, 2013, and

timely provided Liberty with notice of same on March 1, 2013. *See* Brown Dec., at ¶ 9.

Plaintiff points out that Liberty's "Claims Notes" dated March 5 and March 6,

2013 indicate that "Lauren's position is that this was self defense." Pl. Ex. 4, ECF 37-6.

By letter dated March 6, 2013, Liberty acknowledged notice of the claim.  Brown Decl. ¶

10. The letter specifically cites the insuring agreement of the Liberty Policy and the

"intended or expected" injury exclusion. *Id.*  The letter further states:

> Please forward all information, documents and materials you may have
> regarding this matter. We will continue to investigate this claim and will
> review the potential of coverage under your policy. We reserve all rights
> pertaining to coverage for Lauren McCormack under the above referenced
> policy for this claim, including the right to address the applicability of all policy
> terms, provisions and conditions. You are advised to retain counsel to
> represent your interests in this matter. Please be advised that any
> insurance policy(ies) that may be involved impose on an insured a duty to
> cooperate with us in investigating, settling or defending this matter and to
> assist us in enforcing rights an insured may have against any other carrier.
> The insured is obligated to provide notice to any other primary, excess,
> umbrella or other insurance carriers whose coverage may be implicated by
> this lawsuit and to let us know who these carriers are.
>
> While we have attempted to address all of the coverage considerations
> related to this claim, Liberty Mutual reserves all rights under applicable law
> and the policy. This letter should not be construed as a waiver or estoppel of
> any of the possible coverage defenses afforded by the policy or applicable
> law.
>
> "Based on the information provided, we are disclaiming coverage for this loss
> and will not be providing a defense or indemnification for the above
> referenced claim."
>
> Please continue to forward to us any suits or claims you receive relating to
> this matter, as well as any other information you believe may have an impact
> on our position.

Brown Decl. ¶ 10 (citing Def. Ex. C, ECF 36-5).

A copy of this letter was sent to counsel for Bunnenberg in the Underlying Action, who is also counsel for her herein. *Id.*  Plaintiff argues that Liberty issued this letter without ever having reviewed the Complaint in the Underlying Action, and without any investigation, or even mention of McCormack's claim of self-defense. *See* ECF 28, at P. 9, ¶ 27.  In light of Liberty's position, McCormack filed a pro se Answer in the Underlying Action in which she, among other things, denied that she committed any assault or battery of Bunnenberg. Pl. Ex. 5, ECF 37-7.

By letter dated March 13, 2013, Liberty acknowledged receipt of the Complaint in the Underlying Action. Brown Decl. ¶ 11. A copy of the letter was sent to Bunnenberg's counsel. *Id.* The letter specifically advised McCormack as follows:

> We have received the complaint served on you in the above-captioned matter. Based on our review of the complaint and the terms of the LibertyGuard Deluxe Homeowners Policy held by your parents, James and Vivian McCormack, we will provide you with a defense, subject to the position outlined in this letter.
>
> * * *
>
> Based on the allegations in the Complaint and the information provided, Liberty Mutual will defend you. However, Liberty Mutual disclaims any obligation to indemnify you for any "bodily injury" or "property damage" that was not caused by an "occurrence." Liberty Mutual also disclaims any obligation to indemnify you to the extent Exclusion 1.a. applies. Exclusion 1.a. excludes liability coverage for "bodily injury" or "property damage' which is expected or intended by one or more  insureds."

*Id.* (citing Def. Ex. D, ECF 36-6).  Plaintiff argues that "[l]ike Liberty's March 6, 2013 letter, its March 13, 2013 letter did not disclaim as to, or even mention, McCormack's claim of self-defense. And Liberty has never brought any declaratory judgment or other action of any kind seeking a determination of its coverage obligations in light of that claim." ECF 38, at p. 10, ¶ 30.

Liberty retained the independent law firm of Mulholland Minion Davey McNiff & Beyrer to defend McCormack for the Underlying Action. Brown Decl. ¶ 13. That law firm defended McCormack throughout the entirety of the Underlying Action, and Liberty paid all costs of McCormack's defense. *Id.* On March 19, 2013, these attorneys filed a second Answer on McCormack's behalf to the original Complaint. *See* Pl. Ex. 6, ECF 37-8. That Answer again denied that McCormack committed any assault or battery of Bunnenberg, and asserted an affirmative defense sounding in justification.

On March 25, 2013, in the Criminal Court of the City of New York, County of Bronx, McCormack entered into conditional guilty pleas "to [N.Y.] Penal Law Section 120.00(2), assault in the third degree, reckless; and [N.Y.] Penal Law Section 240.26(1), harassment, the violation." *See* March 25, 2013 transcript of criminal proceeding and allocution, at pp. 4-5 (attached to Liberty's moving papers at Exhibit "K", ECF 36-13). As the Court stated: "If the defendant lives a law-abiding life for the next 18 months, completes the 12-week anger management course with Bronx Community Solutions, completes three weeks of counseling, private, also with Bronx Community Solutions, and a four-week parenting class, abides by an Order of Protection, completes the in-court apology that we have agreed upon and makes all court appearances, then the Court will vacate the misdemeanor plea to Penal Law Section 120.00 (2) at approximately September 25, 2014." *Id.*

The factual portion of the plea allocution provides:

THE COURT: I'm going to ask you now about what happened on October 26, 2011, here in the Bronx at Pennyfield Avenue.

7

Is it true that at that time that you recklessly caused physical injury to Tara Bunnenberg by striking her in the face with your fist repeatedly and pulling her hair, throwing her to the floor, causing her head to hit the bedframe so that she ended up having a fractured left orbital, among many other injuries, to her face? Is that correct?

MR. PETRIGH [defense counsel]: Is that factual allocution specifically for recklessness?

THE COURT: Well, would you like to add or amend it in any way?

MR. PETRIGH: I'd like to amend it to perhaps the latter part.

THE COURT: Could you be more clear on what you mean by "the latter part"?

MR. PETRIGH: The last sentence of the first paragaraph.

THE COURT: Why don't you state what it is you want to have your client respond to because I'm not sure I understand. You can make the inquiry if you'd like, just clarify it because we need to move on.

MR. PETRIGH: Just the portion about throwing the complainant to the floor and having her hit her head against the bedframe.

THE COURT: You want to withdraw that section?

MR. PETRIGH: I want that to be the allocution as to the reckless.

THE COURT: Fine. I'll rephrase the question. Why don't you put the question to your client instead?

MR. PETRIGH: Is it true that you threw her to the floor causing her to hit her head against the bedframe on October 26th, 2011?

THE DEFENDANT: Yes.

THE COURT: Is that satisfactory to the People?

MR. PETRIGH: Causing her to sustain those injuries?

THE COURT: Causing her to sustain the injuries I've mentioned, the fractured left orbital. Is that all correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: I'm satisfied with the allocution. At this point, then, the only thing left is for the defendant to make her apology to the complainant.

THE COURT: Go ahead.

THE DEFENDANT: Tara, I'm sorry for everything that happened on October 26th. I should never have gone to Rivera's room that night and wish I hadn't. I never meant to hurt you, and I am sorry that you were injured.

If I could take back my actions from that day, I would. I hope you are able to get better and we both can move on from this event.

THE COURT: All right. I believe that your statement has been acknowledged and heard by the complainant. I'm not sure whether there will be an acceptance of your apology. That's something that, maybe some time in the future when the Order of Protection has expired, you can work out, but your apology has been conveyed.

*Id*. at 11-13.

In or around September 2014, McCormack's plea to Assault in the Third Degree was vacated and that charge was dismissed. *See* December 17, 2014 Order of Hon. Denise L. Sher in the Underlying Action, Pl. Ex. 7, EFC 37-9, at p 7 ("while defendant [McCormack] initially pled guilty to Assault in the Third Degree, said plea was ultimately, eighteen months later, vacated, and she was sentenced only on a plea to Harassment in the Second Degree, a non-criminal violation").

In October 2014, Bunnenberg brought a motion in the Underlying Action seeking summary judgement on the issue of liability based upon McCormack's conditional plea to Assault in the Third Degree and her plea to Harassment in the Second Degree. More specifically, Bunnenberg argued that as a result of McCormack's allocution statement made in connection with those pleas that McCormack "recklessly caused physical injury to Tara Bunnenberg by

throwing her to the floor causing her to hit her head on the bedframe," McCormack was precluded from contesting liability in the Underlying Action. *See* December 17, 2014 Order of Hon. Denise L. Sher, Pl. Ex. 7, at pp. 2-3.  Bunnenberg also moved for the dismissal of all of McCormack's exculpatory affirmative defenses in the Underlying Action, including that sounding in self-defense, on the ground, *inter alia*, that as a result of McCormack's aforesaid pleas and allocution statement, McCormack was precluded as a matter of law from asserting such defenses or raising any fact in support of same. *Id.*

The trial court in the Underlying Action denied Bunnenberg's motion in all respects.  In doing so, the trial court found that: (i) since McCormack's conditional plea to Assault in the Third Degree was ultimately vacated and that charge dismissed, that conditional plea was legally insufficient to invoke the doctrine of collateral estoppel so as to impose civil liability upon McCormack; (ii) McCormack's allocution statement that she "recklessly caused physical injury to Tara Bunnenberg by throwing her to the floor causing her to hit her head on the bedframe" was legally insufficient to establish upon a motion for summary judgment that McCormack intended to cause injury to Bunnenberg; (iii) McCormack's plea to the non-criminal charge of Harassment in the Second Degree was insufficient as a matter of law to impose any civil liability upon McCormack, and (iv) given the forgoing, McCormack "no longer had the same incentive to contest the charge against her and it cannot be said that she was given a full and fair opportunity to litigate the issue of liability." *Id.*, at pp. 7-8.

Subsequently, Bunnenberg brought a motion in the Underlying Action seeking leave to amend her Complaint so as to assert a new and additional cause of action against McCormack; to wit that McCormack negligently and/or recklessly caused injury to Bunnenberg. *See* January 4, 2021 Order of Hon. Denise L. Sher in the Underlying Action, Pl. Ex. 8,  ECF 37-10.  In bringing this motion, Bunnenberg noted that the parties, including Liberty, had been engaging in settlement negotiations, and explained that it was the intent of the parties that, upon settlement, Bunnenberg's original cause of action sounding in intentional tort would be dropped from the case, leaving only Bunnenberg's new cause of action sounding in negligence and/or recklessness pending against McCormack. *Id.* Judge Sher's decision notes, however, that while counsel represented that the parties believed they had settled the case in that Liberty's counsel should sign off on the agreement, "the coverage counsel for Liberty has refused to accept the settlement agreement as written even though it has been previously agreed by him, because of the three changes: (1) a fact statement as to the plea as already determined by the court; (2) any increased amount agreed upon by the insurance company of three hundred fifty thousand dollars; and, (3) amending the pleadings to conform to the facts of the case. Unfortunately, due only to the insurer's counsel not approving that which had been previously agreed upon, the case was not settled." *Id.* at 3. Nevertheless, Judge Sher granted the motion to amend.

On January 7, 2021, Bunnenberg filed and served an Amended Complaint in the Underlying Action.  Brown Decl. ¶ 14.  Liberty was provided with a copy at or about that same time. *Id.* The Amended Complaint has two causes of action. *See*

Def. Ex. E, ECF 36-7.  The first alleges that Bunnenberg was at SUNY Maritime College visiting her boyfriend, Cruz Rivera, when she answered the telephone and recognized the voice of McCormack, who Bunnenberg was aware had previously dated Rivera. *Id.* ¶¶ 9-11.  Bunnenberg contends that to avoid any confrontation, she collected her things and began to leave the room. *Id.* ¶ 12.  She asserts, however, that before she could leave, the door opened and McCormack entered. *Id.* ¶ 13.  Bunnenberg contends that she and McCormack "came in contact with each other and without any conversation, Defendant McCormack began pushing, shoving and striking Plaintiff Bunnenberg." *Id.* ¶ 14.  Bunnenberg  asserts that McCormack's actions "constituted negligent and/or reckless behavior by Defendant McCormack." *Id.* ¶ 15.  Bunnenberg contends that "[a]s a consequence of" these acts, she "suffered physical injury, anxiety, psychological damages, emotional stress, professional embarrassment, concern, loss of reputation, public humiliation and potential loss of income." *Id.* ¶ 16.  Bunnenberg maintains that as a result of McCormack's "negligence and/or recklessness," McCormack owes her damages "in an amount within the jurisdictional limits of this Court." *Id.* ¶ 17.

In the second cause of action, Bunnenberg claims that McCormack "intentionally attacked, struck, battered, and bruised" her, *id.* ¶ 20, that McCormack's actions "constituted an intentional act of assault and battery," *id.* ¶ 22, and that as a consequence of these acts, Bunnenberg suffered "physical injury, anxiety, psychological damages, emotional stress, professional embarrassment, concern, loss of reputation, public humiliation and potential loss of income." *Id.* ¶ 23.

Plaintiff's counsel contends that "[o]n or about January 19, 2021, McCormack served an Answer to the Amended Complaint, which Answer again denied that McCormack had ever assaulted or battered Bunnenberg, and again asserted an affirmative defense sounding in justification/self-defense (attached here at Exhibit "10")." Benes Decl., ECF 37, p. 14, ¶ 45; *see* ECF 38, p. 14, ¶ 45 (same).  However, Plaintiff's Exhibit 10 has not been provided, and counsel's declaration cannot be accepted for purpose of stating a fact in this regard. *See Scott v. Cambisi*, No. 20-CV-6388MWP, 2024 WL 867102, at *12 (W.D.N.Y. Feb. 29, 2024)("Of course, the court cannot consider factual assertions made in an attorney's declaration that are unsupported by the evidence in the record.")(cleaned up).

Defendant contends that "[o]ther than attempting to manufacture coverage with a negligent claim with a summary allegation '[t]hat the aforementioned actions by Defendant McCormack constituted negligent and/or reckless behavior by Defendant McCormack,' the Amended Complaint did not change Liberty Mutual's coverage position. We continued to defend Lauren subject to the reservation of rights and disclaimers of coverage set forth in the March 13, 2013 letter." Brown Decl. ¶ 14. Plaintiff contends that "Liberty never issued any disclaimer of coverage in connection with the Amended Complaint.  And thus, Liberty never disclaimed coverage for, nor reserved any right to do so, with respect to the First Cause of Action of the Amended Complaint, sounding in negligence and/or recklessness." *Id.* (citations omitted).  ECF 37, p. 15, ¶ 46. Plaintiff further contends:

> Other than the underlying trial court's findings that neither McCormack's criminal pleas, nor McCormack's allocution statement that she "recklessly caused physical injury to Tara Bunnenberg by throwing her to the floor causing her to hit her head on the  bedframe", were legally sufficient to

impose civil liability upon McCormack in favor of Bunnenberg as a matter of law, no findings concerning the legal basis of McCormack's liability to Bunnenberg for her injuries, or any finding respecting the validity of McCormack's claim of self defense, were rendered in the Underlying Action.

*Id.* ¶ 48.

On September 15, 2021, the parties in the Underlying Action entered in a "Stipulation Re: Consent Judgment" ("Stipulation") that provides that they were "interested in settling this claim by the entry of a Judgment, which Tara will then attempt to enforce against Liberty Mutual, pursuant to N.Y. Ins. Law §3420(a)(2) and (b)." *See* Stipulation, Def. Ex. F, ECF 36-8.  The Stipulation provides that Liberty Mutual was notified prior to the signing of the stipulation and "consents to its execution as a settlement of the claim pending in the" Underlying Action. *Id.*  In this regard, the Stipulation provides:

1. It is stipulated and agreed that Tara may enter Judgment against Lauren in this action in the amount of Three Hundred Fifty Thousand Dollars ($350,000.00) in the above entitled action, which shall fully and completely resolve all causes of action alleged in the above-captioned action.

2. Upon entry of Judgment, Tara will pursue enforcement of the judgment against Liberty Mutual pursuant to N.Y. Ins. Law § 3420.

3. Tara agrees that she will only enforce the Judgment against Liberty Mutual; and that she will not attempt to enforce the Judgment against Lauren or any of Lauren's other assets. Lauren shall not have any personal liability or obligation to pay any amount to Tara as a result of the above-captioned lawsuit, and Tara agrees to look solely to the Liberty Mutual Policy for satisfaction.

3 (sic). Tara and Lauren each acknowledge that they are entering into this Agreement freely and voluntarily, that they have ascertained and weighed all the facts and circumstances likely to influence their judgment herein; that they have sought and obtained legal advice independently of each other; and that they clearly understand and assent to all the provisions of this Agreement.

4. Tara shall provide a Full Satisfaction of Judgment for the anticipated Judgment to counsel for Lauren, which shall be held in escrow. Such Satisfaction of Judgment may be filed if (1) Tara fails to commence suit against Liberty Mutual to enforce the Judgment within three (3) months of the date of entry of the Judgment; (2) if a court of competent jurisdiction determines that Liberty Mutual is not responsible for paying the Judgment; (3) any action against Liberty Mutual for enforcement of the Judgment is dismissed or resolved; or (4) if the Judgment is satisfied by payment.

5. Nothing herein shall be deemed to be an admission that coverage exists under the Liberty Mutual Policy for their Judgment, and the Parties recognize that (sic) understand that Liberty Mutual intends to contest any duty to indemnify for the Judgment.

Def. Ex. F.

Liberty contends that it "consented to this arrangement to protect Lauren from any alleged Judgment that may be entered against her. Liberty Mutual's intent was always to continue its disclaimer of coverage based on the facts of this case." Brown Decl. ¶ 16.  In this regard, Liberty asserts that "Bunnenberg suffered injury when Lauren repeatedly punched her in the face with her fists, and when Lauren yanked on Bunnenberg's hair causing her to fall. Those are not accidental acts covered by the Liberty Mutual Policy." *Id.*

On June 22, 2022, pursuant to the Stipulation, the Court in the Underlying Action entered Judgment in favor of Bunnenberg and against McCormack in the sum of $350,000. Brown Decl. ¶ 17 (citing Def. Ex."G" ("Consent Judgment"), ECF 36-9). Liberty argues that it does not owe a duty to indemnify or pay for the Judgment. Brown Decl. ¶ 18. Liberty maintains that "[t]he alleged damages resulting in the Judgment were not caused by any type of 'occurrence' or accident, and thus they do not fall within the insuring agreement of the Liberty Mutual Policy. In addition, the claim alleged in the

15

Underlying Action falls wholly within exclusion 1.a.  Bunnenberg's injuries, given the facts of the case, were wholly expected or intended by Lauren." *Id.*

As indicated above, Plaintiff commenced this action in Albany County Supreme Court, and the case was removed to this court on November 8, 2022 based upon diversity of citizenship.  On July 14, 2023, Judge Stewart found that Plaintiff had committed discovery violations by failing to properly respond to an interrogatory  demand and the Court's repeated Discovery Orders, and held as follows:

> In the Court's view, the outright dismissal of Plaintiff's claim against the Defendant is too harsh a remedy for the facts of this dispute and would not promote a just resolution of the case. On the other hand, merely delaying discovery until Plaintiff and/or her counsel finally relent and comply with the Court's repeated Discovery Orders is a somewhat hopeless prospect considering their conduct to date, nor does the Court find it sufficiently severe to deter future misconduct.  The noncompliance in this case is clearly willful and repeated. Indeed, several months and three Court Orders after this issue was first raised, Plaintiff and her counsel have *still* not provided a properly signed and responsive answer to Interrogatory No. 8, which was initially served on January 23, 2023. Plaintiff, represented by counsel, was aware of the possibility of sanctions.

> After considering the nature of the misconduct and the available options, the Court finds that the sanction which is most closely associated with the discovery dispute at issue, and which would provide the most effective remedy, would be a judicial finding of fact in favor of the Defendant based upon the subject matter of the unanswered Interrogatory. In this case, such a finding is as follows: Defendant's insured, McCormack, repeatedly struck Plaintiff Bunnenberg in the face with her fist during the incident. The Court understands that this fact may be of particular significance in this case, as it may relate to whether there is insurance coverage under the policy. That legal determination is not being made here, however, and Plaintiff's counsel disputes its significance. Nevertheless, the finding is certainly consistent with Plaintiff's own previous deposition testimony, and it is a fact which now cannot be disputed, either at trial or on motion, through any purported claim that Plaintiff's memory is somehow faulty or for any other reason.

> In addition, the Court finds an award of costs appropriate in this case. Defense counsel has provided an itemization of his expenses incurred to

date in dealing with this issue. The Court has carefully reviewed the billing records and finds the rate and the time spent to be in order. Accordingly, the Court imposes costs in the amount of $705.37. Because of the history of the case, the Court directs that the cost be paid by Plaintiff's counsel. In light of the foregoing, and considering the apology provided to the Court by Mr. Benes, the Court declines to impose any formal contempt finding at this time.

July 14, 2023 Order, ECF 31, at 7-9 (citations omitted, emphasis in original).

The case is now before the Court on Defendant's motion for summary judgment.

## III.    STANDARD OF REVIEW

On a motion for summary judgment the Court must construe the properly disputed facts in the light most favorable to the non-moving party, *see Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007), and may grant summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Once a defendant has met this initial burden, the plaintiff must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 323–24 (internal quotation marks omitted).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings,*

17

*Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "On summary judgment, evidence used to raise an issue of fact must be admissible or contain evidence that will be presented in a form admissible at trial." *Ava Realty Ithaca, LLC v. Griffin*, No. 5:19-CV-123, 2021 WL 3848478, *5 (N.D.N.Y. Aug. 26, 2021) (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001)). "'[M]aterial relied on at summary judgment need not be admissible in the form presented to the district court. Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered at summary judgment.'" *Id.* (quoting *Smith v. City of New York*, 697 Fed. Appx. 88, 89 (2d Cir. 2017)).

The Court's inquiry upon summary judgment is "determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## IV.    DISCUSSION

### Duty to Indemnify/Parties' Burdens

Under New York law,[4] "'[t]he duty to indemnify is determined by the actual basis for the insured's liability to a third person, and does not turn on the pleadings, but rather

---

[4] 5C@K<Mⅅ2NkBM@0ⅅC<O//@R !:JMFⅅ-R BJQ@MINⅅC@ⅅIC@MKM@Q<ⅅJI IJAⅅC@ Liberty Policy kI? R C@ⅅC@M! Liberty has a duty to indemnify.

on whether the loss, as established by the facts, is covered by the policy.'" *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 150 (2d Cir. 2016)(quoting *Atl. Mut. Ins. Co. v. Terk Techs. Corp.,* 309 A.D.2d 22, 28, 763 N.Y.S.2d 56 (N.Y. App. Div. 2003), and citing *Robbins v. Mich. Millers Mut. Ins. Co.,* 236 A.D.2d 769, 770, 653 N.Y.S.2d 975 (N.Y. App. Div. 1997) ("While the duty to defend is generally measured against the allegations of the pleadings in the underlying action, the duty to indemnify is distinctly different, for it is determined by the actual basis of the insured's liability to [a] plaintiff.")); *see also Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 178, 667 N.Y.S.2d 982, 986 (N.Y. 1997)("While the duty to defend is measured against the possibility of a recovery, the duty to pay is determined by the actual basis for the insured's liability to a third person.")(cleaned up). "In contrast to the duty to defend, '[t]he narrower duty to indemnify arises only if the claim for which the insured has been judged liable lies within the policy's coverage.'" *Harleysville Ins. Co. v. Certified Testing Lab'ys Inc.*, 681 F. Supp. 3d 155, 167 (S.D.N.Y. 2023)(quoting *Allianz Insurance Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005), in turn citing *Frontier Insulation Contractors, Inc. v. Merchants Mutual Insurance Co.*, 91 N.Y.2d 169, 178, 667 N.Y.S.2d 982, 986-87, 690 N.E.2d 866 (N.Y. 1997)).

> **"**In determining a dispute over insurance coverage, we first look to the language of the policy" (*Consolidated Edison Co. of N.Y., Inc. v. Allstate Ins. Co.,* 98 N.Y.2d 208, 221, 746 N.Y.S.2d 622, 774 N.E.2d 687; *see Gem–Quality Corp. v. Colony Ins. Co.,* 209 A.D.3d 986, 990, 177 N.Y.S.3d 133 ). "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court" (*White v. Continental Cas. Co.,* 9 N.Y.3d 264, 267, 848 N.Y.S.2d 603, 878 N.E.2d 1019 [citation omitted]; *see Baron v. New York Mut. Underwriters,* 181 A.D.3d 638, 640, 121 N.Y.S.3d 120). Generally, in a dispute over insurance coverage, the insured bears the initial burden of establishing that the loss claimed falls within the scope of the

policy (*see McIntosh v. Ronit Realty, LLC,* 181 A.D.3d 581, 582, 121
N.Y.S.3d 88; *Bread & Butter, LLC v. Certain Underwriters at Lloyd's, London,*
78 A.D.3d 1099, 1101, 913 N.Y.S.2d 246). Once coverage is established, the
insurer has the burden of proving the applicability of an exclusion (*see
Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873,
476 N.E.2d 272; *Castillo v. Prince Plaza, LLC,* 164 A.D.3d 1418, 1419–1420,
84 N.Y.S.3d 529). "'Policy exclusions are to be strictly and narrowly
construed and are not to be extended by interpretation or implication'"
(*Grenadier Realty Corp. v. RLI Ins. Co.,* 218 A.D.3d 751, 753, 192 N.Y.S.3d
677, quoting *East Ramapo Cent. Sch. Dist. v. New York Schs. Ins.
Reciprocal,* 150 A.D.3d 683, 686, 54 N.Y.S.3d 413). ⌐

*Parisi v Kingstone Insurance Company*, No. 2021–02299, 606058/18, 212 N.Y.S.3d

195, 196–97, 2024 N.Y. Slip Op. 02926, 2024 WL 2739867 (N.Y. App. Div., May 29,

2024).

## An Occurrence/Expected or Intended Injuries

Defendant's motion seeks summary judgment on two grounds: the first being that

the Incident allegedly did not arise from an "occurrence" as that term is defined by the

Liberty Policy; and the second being that Bunnenberg's injuries resulting from the

Incident were purportedly "expected or intended" within the meaning of an exclusion

contained in the Liberty Policy ("the Intentional Acts Exclusion"). *See generally* Liberty's

Motion, ECF 36.

The Liberty Policy defines "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions." *See* Liberty

Policy, at "Definitions", "5. Occurrence" (Bates No. LMFIC 0766) (attached to Liberty's

moving papers at Exhibit "A").  The Liberty Policy also bars coverage by the exclusion

for bodily injury "which is expected or intended by one or more insureds." *See* Brown

Decl. ¶ 7 (quoting Def. Ex. A).  Citing to Bunnenberg's affidavit in the Underlying Action,

her deposition in that action, and her deposition in this action, Liberty argues that "there

are no facts to suggest that the Incident was not the result of intentional conduct." ECF
36-19, at p. 10.  In this regard, Liberty argues that it is undisputed that Lauren entered a
dorm room where Bunnenberg was located and yelled obscenities at her; that,
unprovoked, Lauren struck Bunnenberg repeatedly in the face with her closed fist; that
Bunnenberg did not hit Lauren back; that once Bunnenberg began to bleed from the
nose and face, Mr. Riviera stepped in between Lauren and Bunnenberg but Lauren
reached over Mr. Riviera, grabbed Bunnenberg by the ponytail pulling both Mr. Riviera
and Bunnenberg forward, and then "violently" let go, propelling Bunnenberg to fall down
so that she struck her head on the corner of the bed; that Lauren was arrested for the
conduct; and that Bunnenberg did nothing to provoke the attack. ECF 36-19, at pp. 10-
11.  Defendant argues:

> Applying case law addressing what constitutes an "occurrence" and what
> type of claims fall within the "expected and intended" injury exclusion, it is
> clear that Liberty Mutual does not owe a duty to indemnify Lauren for the
> Judgment entered against her in the Underlying Action. In looking at the
> transaction as a whole, Bunnenberg's damages flowed directly and
> immediately from an intended act, thereby precluding coverage.
> Bunnenberg's injuries were to be reasonably expected by Lauren when she
> punched her in the face multiple times and grabbed her hair and threw her
> down. The harm to Bunnenberg was inherent in the nature and force of
> Lauren's acts.  . . .  Lauren confronted Bunnenberg and intentionally and
> maliciously subjected Bunnenberg to a battery.

*Id.* at 11.

In opposition, Plaintiff correctly notes that the New York Court of Appeals has
held that it is an "age-old principle" that "in deciding whether a loss is the result of
an accident, it must be determined, *from the point of view of the insured*, whether
the loss was unexpected, unusual and unforseen." *Agoado Realty Corp. v. United
Intl. Ins. Co.*, 95 N.Y.2d 141, 145, 711 N.Y.S.2d 141 (N.Y. 2000) (emphasis in

original). "For an occurrence to be covered under the [subject] polic[y], the injury must be unexpected and unintentional. We have read such policy terms narrowly, barring recovery only when the insured intended the damages." *Cont'l Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 649, 593 N.Y.S.2d 966 (N.Y. 1993).

Relying on the pleadings in the underlying action filed by or on behalf of Lauren, Lauren's deposition testimony in the Underlying Action, and portions of Lauren's plea allocution in the criminal case arising from the Incident, Plaintiff argues that while McCormack acknowledges that Bunnenberg sustained injuries in the course of the Incident, "McCormack has consistently and repeatedly attested that Bunnenberg, and not her, was the aggressor of the Incident, she was acting only in self-defense during the Incident, and that she had no intention or expectation of causing any injury to Bunnenberg thereby." ECF 37-13, at p. 2. Defendant counters that this material, in its present form, constitutes inadmissible hearsay that cannot be considered on a motion for summary judgment.

"On summary judgment, evidence used to raise an issue of fact must be admissible or contain evidence that will be presented in a form admissible at trial." *Ava Realty*, 2021 WL 3848478, *5 (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001)). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and a "district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (internal quotation marks omitted). **"'**[M]aterial relied on at summary judgment need not be admissible in the form presented to the district court. Rather, so long as the evidence in

question "will be presented in admissible form at trial," it may be considered at summary

judgment.'" *Id.* (quoting *Smith v. City of New York*, 697 Fed. Appx. 88, 89 (2d Cir.

2017)); *see Auclair v. Corning Inc.*, No. 1:21-CV-633 (MAD/DJS), 2024 WL 1345498, at

*13 (N.D.N.Y. Mar. 28, 2024)(same), *appeal withdrawn,* No. 24-1172, 2024 WL

3589816 (2d Cir. May 6, 2024). "A party may object that the material cited to support or

dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.

R. Civ. P 56(c)(2).  "However, on summary judgment, a party need not produce

evidence *in a form* that would be admissible at trial." *Ava Realty,* 2021 WL 3848478, at

*4 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (emphasis supplied in *Ava*

*Realty*). "Rule 56(c)(2) focuses on the admissibility of the evidence's content, not its

form." *Id.*  "'[M]aterial relied on at summary judgment need not be admissible in the form

presented to the district court. Rather, so long as the evidence in question will be

presented in admissible form at trial, it may be considered on summary judgment.'"

*AngioDynamics, Inc. v. C.R. Bard, Inc.,* 537 F. Supp. 3d 273, 318–19 (N.D.N.Y.

2021)(quoting *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (internal

quotation marks omitted)).

Here, McCormack's plea allocution is ostensibly admissible at trial, *see*

*Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities*

*LLC,* 528 F.Supp.3d 219, 233 (S.D.N.Y. 2021)("The various plea allocutions are

admissible under Federal Rules of Evidence 803(22) and 807, as several courts

considering this issue in similar contexts have held.")(citing *Securities Investor*

*Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, 610 B.R. 197,

209 (Bkrtcy. S.D.N.Y., 2019)("Criminal plea allocutions are admissible under the

exceptions to the hearsay rule set forth in FED. R. EVID. 803(22) for a judgment of a previous conviction and FED. R. EVID. 807's residual exception to hearsay."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC ("Legacy Capital Ltd.")*, 603 B.R. 682, 689-90 & n.8 (Bankr. S.D.N.Y. 2019) ("The Court may rely on a plea allocution as evidence to support a fact.")(collecting cases)), and at the very least provides evidence related to the instant motion which McCormack may ultimately be called to testify about at trial.

McCormack's deposition testimony in the Underlying Action may also be considered on this motion. *See Linzy v. Uber Techs., Inc.*, No. 21 CIV. 05097 (ER), 2023 WL 7302643, at *3–4 (S.D.N.Y. Nov. 6, 2023), *reconsideration denied,* No. 21 CIV. 05097 (ER), 2024 WL 2882186 (S.D.N.Y. June 7, 2024)("The Court will consider Alemar's testimony. At the summary judgment stage, several courts have found that deposition testimony from another action may be considered regardless of whether Rule 32(a)(8)'s requirements are satisfied."). "To be used on summary judgment in a new case, depositions from another case need only satisfy Rule 56's requirements and become part of the record in the new case." *BPI Lux S.a.r.l. v. Bd. of Managers of Setai Condo. Residence at 40 Broad St.*, No. 18 Civ. 1621 (NRB), 2019 WL 3202923, at *2 n.4 (S.D.N.Y. July 16, 2019 ). Even though Liberty did not have the opportunity to challenge McCormack's testimony at her deposition in the Underlying Action, it is possible that McCormack could be called to testify at trial to the substance of that which is contained in her deposition in the Underlying Case. This allows the Court to consider that deposition testimony on this motion for summary judgment. *See Kanciper v. Lato*, No. 13 Civ. 0871 (SJF) (SIL), 2016 WL 11507274, at *13 (E.D.N.Y. Dec. 1, 2016)

(finding that deposition testimony from a state court action could be considered on summary judgment because "although the deposition testimony ultimately may not be admissible at trial under Rule 32(a) of the Federal Rules of Civil Procedure, the witnesses who gave such testimony may, themselves, testify at trial"); *see, e.g.*, *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014) (observing that "in a proper case, depositions from one case may be used at the summary judgment stage of another, even if Rule 32(a)(8)'s requirements are not met"); *Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) (holding that deposition testimony is the equivalent of an affidavit and may be used on summary judgment "regardless of whether the testimony was taken in a separate proceeding," so long as the depositions "were made on personal knowledge and set forth facts that were admissible in evidence"). !!

The pleadings in the Underlying Action, because they are unverified, do not necessarily contain admissible evidence but, for reasons discussed above, the allegations underlying these pleadings may be considered on this motion given the potential that McCormack may be called upon to testify at trial and to address the circumstances underlying those pleadings.

## Analysis

Here, the subject policy provides coverage for, among other things, bodily injury caused by an "occurrence," which is defined, in pertinent part, as "an accident ... which results in ... bodily injury." The policy also contains an exclusion for bodily injury which "is expected or intended by the insured."  !

In *Miller v. Continental Ins. Co.,* 40 N.Y.2d 675, 389 N.Y.S.2d 565, 358 N.E.2d 258, [the New Yok Court of Appeals] articulated the rule for

determining whether a loss is the result of an accident or an intentional act as those terms are commonly used in insurance policies. The term "accident" is broadly defined in our jurisprudence, utilizing an average person standard (*see, id.,* at 676, 389 N.Y.S.2d 565, 358 N.E.2d 258). As [the Court] noted in *Miller,* true "accidents," taken literally, may be rare occurrences. Indeed, "'in the strictest sense and dealing with the region of physical nature there is no such thing as an accident'" (*id.,* at 676, 389 N.Y.S.2d 565, 358 N.E.2d 258, citing *Landress v. Phoenix Mut. Life Ins. Co.,* 291 U.S. 491, 499, 54 S.Ct. 461, 78 L.Ed. 934 [Cardozo, J., dissenting] ). Thus, we concluded that, in deciding whether a loss is the result of an accident, it must be determined, *from the point of view of the insured,* whether the loss was unexpected, unusual and unforeseen (*Miller v. Continental Ins. Co.,* 40 N.Y.2d 675, 677, 389 N.Y.S.2d 565, 358 N.E.2d 258, *supra* [emphasis supplied] ). Moreover, if a coverage exclusion is intended that is not apparent from the language of the policy, it is the insurer's responsibility to make its intention clearly known (*id.,* at 678, 389 N.Y.S.2d 565, 358 N.E.2d 258 [citations omitted] ).

*Agoado Realty Corp. v. United Int'l Ins. Co.*, 95 N.Y.2d 141, 145, 733 N.E.2d 213, 215 (N.Y. 2000).

As Defendant argues, in determining whether a claim constitutes an "occurrence", "courts interpreting similar provisions have opined that certain intentional acts, which actually cause their intended consequences, are not considered 'accidents.'" *Cent. Mut. Ins. Co. v. Willig,* 29 F. Supp. 3d 112, 119 (N.D.N.Y. 2014). Where "the harm to the victim was inherent in the nature of the acts alleged (and admitted by plaintiff) and that harm flowed directly and immediately from plaintiff's intentional acts and, thus, the resulting injuries were intentional and expected, as a matter of law." *Smith v. New York Cent. Mut. Fire Ins. Co.*, 13 A.D.3d 686,688, 785 N.Y.S.2d 776, 777-78 (N.Y. App. Div. 2004). The analysis of whether injury was "caused by an 'occurrence'," as necessary to fall within the insuring agreement, is the same as the analysis as to whether the claim falls within the exclusion for injury "[w]hich is expected or intended by one or more  'insureds'." *Metro. Prop. & Cas. Ins. Co. v. Sarris*, No. 1:15-CV-0780

26

(LEK/DJS), 2017 WL 3252812, at *10 (N.D.N.Y. July 28, 2017)("courts construing similar policy exclusions have concluded that the analysis applicable to the question whether a loss was accidental is the same as that conducted in analyzing the effect of the exclusion"). As Defendant further argues, New York courts addressing the issue make clear that the act of punching someone else in the face cannot constitute an "occurrence" or accident as a matter of law, even for the duty to defend, because harm inherently flows from such act.  ECF 36-19 at pp. 6-7 (collecting cases).

However, as Plaintiff argues and as the case law makes clear, in deciding whether a loss is the result of an accident, it must be determined, from the point of view of the insured, whether the loss was unexpected, unusual and unforeseen.  *Agoado*, 95 N.Y.2d at 145. "For an occurrence to be covered under the [subject] polic[y], the injury must be unexpected and unintentional. [New York courts] have read such policy terms narrowly, barring recovery only when the insured intended the damages." *Cont'l Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 649, 593 N.Y.S.2d 966 (N.Y. 1993). "Resulting damage can be unintended even though the act leading to the damage was intentional." *Cont'l Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d at 649 (citing *McGroarty v. Great Am. Ins. Co.*, 36 N.Y.2d 358, 364-65, 368 N.Y.S.2d 485 (N.Y. 1975) ("Thus, regardless of the initial intent or lack thereof as it relates to causation, or the period of time involved, if the resulting damage could be viewed as unintended by the fact finder the total situation could be found to constitute an accident.")); *see also Mapfre Ins. Co. of N.Y. v. Ferrall*, 214 A.D.3d 635, 637, 185 N.Y.S.201 (N.Y. App. Div. 2023) ("Accidental results can flow from intentional acts, and, thus, a loss may be unintended even though the original act or acts leading to the loss were intentional");

*Rosewood Home Builders, LLC v. Nat'l Fire & Marine Ins. Co.*, 2013 U.S. Dist. LEXIS 45374, at *9-10, 2013 WL 1336594 (N.D.N.Y. 2013) (New York "Courts have construed an 'occurrence' to be an accident that is unexpected and is evaluated irrespective of the acts leading up to the resulting injury so long as the injury or damage is not intended.").

Turning to the second ground upon which Liberty seeks summary judgement, it is well-settled, as a matter of both law and the express language of the Liberty Policy, that "[a]n insurer may avoid coverage under a policy's intentional acts exclusion only if the insurer establishes as a matter of law the absence of any possible legal or factual basis to support a finding that the bodily injury at issue was, from the insured's point of view, unexpected and unintended." *State Farm Fire & Cas. Co. v Chauncey McCabe*, 162 A.D.3d 1294, 1295, 79 N.Y.S.3d 324 (N.Y. App. Div. 2018) (also finding that insured's convictions for assault in the first degree and strangulation in the first degree were insufficient as a matter of law to establish that the insured intended all of the underlying plaintiff's injuries)(citing *Allstate Ins. Co. v Zuk*, 78 N.Y. 2d 41, 45, 571 N.Y.S.2d 429 (N.Y. 1991) (applying the same well-established rule of law, and holding that the inured's conviction for manslaughter in the second degree based upon his reckless conduct was insufficient as a matter of law to establish that the insured intended all of the underlying plaintiff's injuries); *see also Slayko v Security Mut. Ins. Co.*, 98 N.Y.2d 289, 293, 746 N.Y.S.2d 444 (N.Y. 2002) ("more than a causal connection between the intentional act and the resultant harm is required to prove that the harm was intended" under an intentional acts exclusion); Liberty Policy, at the Intentional Acts Exclusion, which states that said Exclusion precludes coverage only for that "bodily injury" "which is expected or

intended by one or more 'insureds'"(Liberty Policy, at "Section II-Exclusions" (Bates No. LMFIC 0790), as modified by endorsement (Bates No. LMFIC 0799)).

Here, Liberty's insured, McCormack, has at all times maintained, and has repeatedly attested, that Bunnenberg, and not her, was the aggressor of the Incident, she acted in self-defense during the Incident, and that she had no intent to cause the injuries which Bunnenberg sustained during the Incident, nor to cause any injury at all to Bunnenberg. *See* Benes Dec., at ¶¶14, 26 and 32-33.  Plaintiff argues that even assuming as "fact" that McCormack did repeatedly strike Bunnenberg in the face with her fist, McCormack has attested that she only struck Bunnenberg in self-defense, and only did so after both Bunnenberg first struck her in the chest with a closed fist, and after Bunnenberg then subsequently came at her a second time with closed fists, after McCormack had already once pushed Bunneberg off her. *See* Benes Dec., at ¶14 (ix) through (xiv), and Exhibit "3".  McCormack has also testified that in defending herself and striking Bunnenberg, she had no intent to injure Bunnenberg, but rather, "the only thing in her head" when she struck Bunnenberg was to get Bunnenberg "off of her." *Id.*   In this context, Plaintiff argues that even assuming as fact that McCormack "repeatedly struck Bunnenberg in the face with her fist during the incident", McCormack's sworn testimony that she only struck Bunnenberg in the course of defending herself, and in so doing had no intent to injure Bunnenberg . . .   completely belies any argument by Liberty that McCormack acted with an inherent wrongful intent to injure Bunnenberg when McCormack struck her during the Incident."  ECF 37-13 at 9.

Plaintiff further argues that "even if one were to assume *arguendo* that Liberty is entitled to an inference of intent to injure on the part of McCormack with respect to

McCormack's striking of Bunnenberg in the face, which Bunnenberg, vehemently contests, any such inference would, as a matter of law, be limited to only those injuries directly caused by McCormack's striking of Bunnenberg in the face, and would not apply to any other injuries Bunnenberg sustained during or from the Incident." *Id.* (citing *State Farm Fire & Cas. Co. v Chauncey McCabe*, 162 A.D.3d at 1297 (explaining that an insurer seeking to avoid coverage on the ground that its insured intended the resulting bodily injuries must demonstrate that its insured intended each and every injury sustained by the injured party, and absent such showing coverage exists). Plaintiff points out that, as admitted by Liberty, Bunnenberg suffered separate injuries from both being: 1) struck in the face, and 2) from being knocked to the ground when either McCormack, or McCormack and Mr. Rivera together, pulled her hair. ECF at 10 (citing Benes Decl., at ¶ 13 (vi); Brown Decl. at ¶16 (admitting that "Bunnenberg suffered injury" both when McCormack "punched her in the face with her fist and when [McCormack] yanked on Bunnenberg's hair causing her to fall").

Here, a reasonable jury may well conclude that McCormack acted intentionally and with the intent to harm Bunnenberg during the Incident. However, the same jury may also conclude that McCormack, as she attested and articulated in her plea allocution, did not intend to harm Bunnenberg but rather Bunnenberg was harmed by McCormack's unintentional, albeit reckless, acts of attempting to defend herself from Bunnenberg's attack. Under these circumstances, and drawing reasonable inferences in Plaintiff's favor, a question of material fact exists as to whether McCormack's actions are covered under the Liberty Policy. Accordingly, Defendant's motion for summary judgment on this ground is denied.

**Estopped From Relying on the Intentional Acts Exclusion**

Citing to New York Insurance Law § 3420(d)(2), which "requires a timely disclaimer of coverage in 'insurance cases involving death and bodily injury claims arising out of a New York accident and brought under a New York liability policy,'" *Golden Ins. Co. v. Ingrid House LLC*, No. 21-1337, 2022 U.S. App. LEXIS 16343, 2022 WL 2165252, at *2 (2d Cir. June 14, 2022)(quoting *KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 23 N.Y.3d 583, 590, 992 N.Y.S.2d 185, 15 N.E.3d 1194 (N.Y. 2014)), Plaintiff argues that Liberty is estopped from relying on the Intentional Acts Exclusion because it did not issue a new disclaimer based on the Amended Complaint in the Underlying Action. *See* ECF 37-13, at pp. 15-16.  Plaintiff's argument is without merit.

As is evident from the facts presented here, Liberty timely disclaimed coverage on the grounds that the underlying Incident represented in the Complaint was not an Occurrence within the meaning of the Liberty Policy, and because, under the facts alleged, Plaintiff's injuries were to be reasonably expected by Lauren when she punched Plaintiff in the face multiple times and grabbed her hair and threw her down, thereby falling under the policy's Intentional Acts Exclusion.  Liberty is not estopped from relying on the lack of an "occurrence" because N.Y. Ins. Law § 3420(d)(2), upon which she relies, does not apply to claims outside of the insuring agreement, such as where there is no "occurrence." *See State Farm Fire & Cas. Co. v. Whiting,* 53 A.D.3d 1033, 1035, 862 N.Y.S.2d 420, 420-21 (N.Y. App. Div. 2008)("We agree with the court that plaintiff has no duty to defend or indemnify defendant with respect to the cause of action alleging an intentional tort. We conclude that the incident herein was not an

'occurrence' within the meaning of the policy . . . .  Because we have concluded that the claim falls outside the scope of the policy's coverage on the ground that the incident is not an occurrence, disclaimer pursuant to Insurance Law 3420(d) is not necessary. Where, as here, the insurance policy does not contemplate coverage in the first instance, requiring payment of a claim upon failure to timely disclaim would impermissibly create coverage where it never existed.")(cleaned up).

The allegations in the First Cause of Action in the Amended Complaint do not necessarily change this assessment. There, the Amended Complaint alleges that "Plaintiff Bunnenberg and Defendant McCormack came into contact with each other and without any conversation, Defendant McCormack began pushing, shoving and striking Plaintiff Bunnenberg." Am. Compl., ¶ 14.  Although Plaintiff alleges that this was "negligent and/or reckless behavior by Defendant McCormack," *id.* ¶ 15, Plaintiff further alleges that as a consequence of these acts by McCormack, Plaintiff suffered a physical injury, anxiety, and other damages. *See id.* ¶ 16.  Although styled as negligent and/or reckless behavior, Liberty could have reasonably concluded that the allegations, including that McCormack began pushing, shoving and striking Plaintiff were sufficient to involve intentional conduct that did not fall under the Liberty policy, thereby obviating the need for a separate disclaimer. *See Whiting,* 53 A.D.3d at 1035, 862 N.Y.S.2d at 420-21. Indeed, Defendant asserts that it had no obligation to reiterate its disclaimer simply because an amended complaint was filed. *See* ECF 44, at p. 8, fn. 3.

Further, Bunnenberg's argument that Liberty waived the intentional acts exclusion is irrelevant because the analysis of whether injury was "caused by an 'occurrence'," as necessary to fall within the insuring agreement, is the same as the

32

analysis as to whether the claim falls within the exclusion for injury "[w]hich is expected or intended by one or more 'insureds'." *Metro. Prop. & Cas. Ins. Co. v. Sarris*, No. 1:15-CV-0780 (LEK/DJS), 2017 WL 3252812, at *10 (N.D.N.Y. July 28, 2017)("courts construing similar policy exclusions have concluded that the analysis applicable to the question whether a loss was accidental is the same as that conducted in analyzing the effect of the exclusion").

Moreover, the Intentional Acts Exclusion is not necessarily waivable under § 3420(d)(2) because that section, by its own terms, only applies to claims for "death or bodily injury arising out of a motor vehicle accident or any other type of accident." N.Y. Ins. Law§ 3420(d)(2). "'Accident' connotes something unexpected or unintended." *Spinosa v. Hartford Fire Ins. Co.*, 90 A.D.2d 574,575,456 N.Y.S.2d 140, 141 (N.Y. App. Div. 1982). Here, as discussed above, it is a question of fact whether McCormack's actions constituted an accident resulting in unexpected or unintended results. Under these circumstances, it is a question of fact whether Plaintiff was entitled to a separate disclaimer for the allegations in the First Cause of Action in the Amended Complaint. *Cf. Legion Ins. Co. v Singh,* No. 85909, 272 A.D.2d 809, 811, 708 N.Y.S.2d 183, 185, 2000 N.Y. Slip Op. 05169, 2000 WL 676212 (N.Y. App. Div., May 25, 2000)("Initially, we agree with Supreme Court's determination that  Insurance Law § 3420 did not entitle the Wades to notice of plaintiff's disclaimer. By no reasonable interpretation could the underlying action be viewed as one for damages "for death or bodily injury arising out of * * * [an] accident occurring within this state" as provided in Insurance Law § 3420(d). Surely, the acts of sexual intercourse that form the basis for the underlying action did not constitute an 'accident.'").

!       For these reasons, Plaintiff's argument that Liberty is estopped as a matter of law from relying upon the Intentional Acts Exclusion contained in the Liberty Policy is denied at this time.

## V.      CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment, ECF 36, is **DENIED.**

**IT IS SO ORDERED.**

Dated:  September 24, 2024
            Albany, New York

Mae A. D'Agostino
U.S. District Judge