**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**TARA BUNNENBERG,**

                            **Plaintiff,**

  vs.                                                **1:22-CV-1174**
                                                         **(MAD/DJS)**

**LIBERTY MUTUAL FIRE INSURANCE COMPANY,**

                              **Defendant.**

---

**APPEARANCES:**                                  **OF COUNSEL:**

**THE LAW OFFICES OF**                **CHRISTOPHER BENES, I, ESQ.**
**CHRISTOPHER BENES**
2119 Skipper Court
Bellmore, New York 11710
Attorney for Plaintiff

**JAFFE & ASHER LLP**                      **MARSHALL T. POTASHNER, ESQ.**
445 Hamilton Avenue
Suite 405
White Plains, New York 10601
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      This case is scheduled to proceed to a bench trial on Tuesday, November 12, 2024. *See* Dkt. No. 49. The issue is whether Defendant Liberty Mutual Fire Insurance Company must indemnify Plaintiff Tara Bunnenberg for a state court judgment in her favor. Presently before the Court is Defendant's motion *in limine* seeking to preclude Plaintiff from (1) submitting out-of-court statements by a non-party, Lauren L. McCormack, into evidence; and (2) testifying

1

inconsistently with her testimony in the underlying state court action. *See* Dkt. No. 52. Plaintiff responds in opposition. *See* Dkt. Nos. 63, 64, 65.[1]

Defendant has also filed three motions to quash subpoenas served on Defendant's attorney Marshall T. Potashner, Esq., Liberty Mutual employee Stephen Brown, Sr., McCormack's attorney in the underlying action, Brian Davey, Esq., and McCormack herself. *See* Dkt. Nos. 60, 62, 66. Plaintiff has not responded to Defendant's motions to quash.

For the following reasons, Defendant's motions are granted in part and denied in part.

## II. BACKGROUND

Plaintiff commenced this action in state court on October 11, 2022. *See* Dkt. No. 2. Plaintiff seeks to indemnify Defendant to cover a $350,000 judgment that Plaintiff was awarded against McCormack. *See id.* Defendant removed the action to this Court on November 8, 2022. *See* Dkt. No. 1. Defendant answered Plaintiff's complaint, asserting that it did not have a duty to indemnify McCormack because the conduct underlying the judgment did not fall within the insurance agreement between McCormack and Liberty Mutual. *See* Dkt. No. 6.

Plaintiff's claim stems from an incident between her and McCormack whereby McCormack physically assaulted Plaintiff. *See* Dkt. No. 58 at 3-6. Defendant argues that the conduct was not an "accident" such that Plaintiff's judgment is not covered by Defendant's insurance policy with McCormack. *See* Dkt. No. 54. Plaintiff has not set forth the argument she intends to present at trial because she did not file a trial brief as ordered in the Court's Bench Trial Order. *See* Dkt. No. 49 at 3. However, as derived from Plaintiff's response in opposition to Defendant's motion for summary judgment, Plaintiff argues that "McCormack, has at all times maintained, and has repeatedly attested, that Bunnenberg, and not her, was the aggressor of the

---

[1] Plaintiff's filings at Dkt. No. 63 and Dkt. No. 64 are the exact same document.

2

Incident, she acted in self-defense during the Incident, and that she had no intent to cause the injuries which Bunnenberg sustained during the Incident, nor to cause any injury at all to Bunnenberg." Dkt. No. 37-13 at 10.  Therefore, Plaintiff contends that because McCormack did not intend all of the injuries to Bunnenberg, the insurance policy covers the sustained injuries. *See id.* at 10-15.

### III. DISCUSSION

A.     **Motions** *in Limine*

A motion *in limine* enables the Court to make an advance ruling on the admissibility of certain anticipated trial evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).  "A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Coleman v. Durkin*, 585 F. Supp. 3d 208, 212 (N.D.N.Y. 2022).  Generally, all "[r]elevant evidence is admissible" unless otherwise provided by an Act of Congress, the United States Constitution, or the Federal Rules of Evidence.  FED. R. EVID. 402.  For instance, Rule 403 grants "the trial court broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative."  *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (citing FED. R. EVID. 403; *United States v. Carter*, 801 F.2d 78, 83 (2d Cir. 1986); *United States v. Martinez*, 775 F.2d 31, 37 (2d Cir. 1985)).  Courts considering motions *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context.  *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).  The Court is also "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as

3

"the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41-42.

### 1. *McCormack's Out-of-Court Statements*

Defendant moves to preclude Plaintiff from introducing documents containing McCormack's out-of-court statements including her deposition testimony and plea allocution from the underlying state court action. *See* Dkt. No. 52-8 at 5. Defendant argues that such evidence is inadmissible as hearsay. *See id.*

"Hearsay" is defined as "a statement that . . . the declarant does not make while testifying at the current trial or hearing; and . . . a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c)(1)-(2). Hearsay is not admissible at trial unless permitted by a federal statute, the Federal Rules of Evidence, or other rules promulgated by the Supreme Court. *See* FED. R. EVID. 802. Of course, there are also a number of settled exceptions to the rule against hearsay.

One exception to the hearsay rule concerns former testimony subject to Rule 804 which states as follows:

> The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> (1) Former Testimony. Testimony that:
>
> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>
> (B) is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

4

FED. R. EVID. 804(b)(1). Additionally, statements against one's interest are not hearsay if (1) "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability" and (2) the statement "is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability." FED. R. EVID. 804(b)(3). As Plaintiff explains, the Federal Rules of Civil Procedure also permit the use of a deposition at trial if "the party was present or represented at the taking of the deposition or had reasonable notice of it;" "it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and" "the witness is more than 100 miles from the place of hearing or trial or is outside the United States." FED. R. CIV. P. 32(a)(1), (a)(1)(4)(B); *see also* Dkt. No. 64 at 4.

The admissibility of McCormack's prior statements was raised on summary judgment. Defendant argued in support of its motion for summary judgment that Plaintiff relied on inadmissible hearsay in the form of McCormack's plea allocution and deposition testimony. *See* Dkt. No. 46 at 22. The Court explained that both documents would be considered on summary judgment because they could be admissible at trial. *See id.* at 22-24. Specifically, the Court concluded that the "plea allocution is ostensibly admissible at trial . . . and at the very least provides evidence related to the instant motion which McCormack may ultimately be called to testify about at trial." *Id.* at 23-24. The Court also explained that "[e]ven though [Defendant] did not have the opportunity to challenge McCormack's testimony at her deposition in the Underlying Action, it is possible that McCormack could be called to testify at trial to the substance of that

5

which is contained in her deposition in the Underlying Case." *Id.* at 24. "This allows the Court to consider that deposition testimony on this motion for summary judgment." *Id.* at 24.

Plaintiff identifies McCormack as a potential trial witness. *See* Dkt. No. 61. Plaintiff argues that Defendant's motion is premature because it is not certain whether McCormack will appear at trial. *See* Dkt. No. 64 at 3. Plaintiff states that McCormack lives more than 100 miles from the Courthouse which would make her an unavailable witness if she was not to appear at trial. *See* Dkt. No. 64 at 5. Plaintiff argues that if McCormack fails to appear, Plaintiff is entitled to a missing witness charge. *See id.* at 3.

The Court takes issue with Plaintiff's representation that McCormack may not appear at trial. Plaintiff bears the burden in this case to prove that the conduct at issue is covered under the insurance policy. *See Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 602 (S.D.N.Y. 2016) ("[T]he one claiming such coverage bears the burden of proving it"). As explained by Defendant, Plaintiff's counsel specifically objected to Defendant's request to transfer this case to the Eastern District of New York. *See* Dkt. No. 62 at 3 (citing Dkt. No. 10). In her objection, Plaintiff argued that "the key Liberty witnesses, including any former employees, are likely located in the Greater Albany area, Plaintiff is willing to travel to Albany, and in any case, in today's age depositions are routinely conducted remotely; especially of non-parties." Dkt. No. 10 at 3. Plaintiff's counsel did not depose McCormack.

Trial was scheduled on October 4, 2024. *See* Text Minute Entry 10/04/24. Plaintiff did not serve a subpoena on McCormack until October 31, 2024. *See* Dkt. No. 65-5. If McCormack does not appear for trial, and based on Plaintiff's current representations, the Court would have to rely almost entirely on McCormack's deposition testimony and plea allocution from 2013 and 2014 to determine the issues in this case. If that occurs, then the Court's and Defendant's efforts

6

to prepare for trial will have been thwarted. If McCormack does not appear at trial, it is entirely unclear to the Court why this case was not handled at summary judgment on submission of the entirety of McCormack's prior testimony.

However, at this juncture, the Court will not decide the admissibility of McCormack's prior testimony or the appropriateness of this case proceeding to trial because the Court cannot predict what will occur at trial. Therefore, the Court reserves ruling on this issue until trial.

### 2. *Plaintiff's Testimony*

Defendant argues that judicial estoppel prevents Plaintiff from testifying during trial in any way that is inconsistent with her statements made in the underlying state court action. *See* Dkt. No. 52-8 at 5-11. Defendant contends that "[i]n the underlying action, . . . it was in [Plaintiff's] interest to testify that McCormack's attack on her was unprovoked, that McCormack was the aggressor in the incident, and that McCormack was not acting in self-defense." *Id.* at 9. However, "in this insurance action, it is in [Plaintiff's] interest to testify that McCormack was acting in self-defense and was not the aggressor." *Id.* at 10.

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). "Thus, '[a] party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment.'" *Id.* (quotation omitted). "There are no 'inflexible prerequisites [and there is no] exhaustive formula for determining the applicability of judicial estoppel'; rather, the inquiry into its application depends

heavily on the 'specific factual context[ ].'" *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 34 (S.D.N.Y. 2015) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).

"A typical application of judicial estoppel also 'requires showing unfair advantage against the party seeking estoppel,' but the Second Circuit has not required this element in all circumstances." *Id.* at 34-35 (quoting *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014)) (additional quotation omitted). "However, because the primary purpose of judicial estoppel is to protect the judicial process, 'relief [under the doctrine of judicial estoppel] is granted in the Second Circuit only when the risk of inconsistent results with its impact on judicial integrity is certain.'" *Id.* at 35 (quoting *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 397 (2d Cir. 2011)).

Plaintiff opposes this aspect of Defendant's motion *in limine*, arguing that "[s]electively choosing certain claimed prior statements of Bunne[n]berg, many of which are taken out of context, and some of which were made in connection [with] matters not at issue at the trial of this case[,] . . . . Liberty asks the Court to limit Bunnenberg's trial testimony to only those statements hand-picked by it.  Such argument is nonsensical . . . ." Dkt. No. 64 at 6.  Without a single case or record citation, Plaintiff contends that (1) "opposing counsel does not get to select, dictate and limit the testimony of any trial witness"; (2) "it is axiomatic that trial witnesses can always expand upon and even explain their [] prior statements/testimony at trial"; (3) "issues of credibility are for the finder of fact"; and (4) "much of what Liberty seeks to limit Bunnenberg to is certain (taken out of context and/or incomplete) self-beliefs of Bunnen[]berg concerning the nature, motive and causes of McCormack's actions in connection with the incident." *Id.* at 6-7.

The Court already found, through Magistrate Judge Stewart's Order, that "Defendant's insured, McCormack, repeatedly struck Plaintiff Bunnenberg in the face with her fist during the

8

incident." Dkt. No. 31 at 8-9. Defendant also identifies excerpts of Plaintiff's affidavit, response to interrogatories, and deposition testimony from the underlying state court action in which Plaintiff repeatedly affirmed that McCormack's assault was unprovoked, and Plaintiff did not hit McCormack. *See* Dkt. No. 52-8 at 7-9; *see also* Dkt. Nos. 52-2, 52-3, 52-9. Of additional significance is the parties' pretrial stipulation, which contains the signature of attorneys for both Plaintiff and Defendant, and states that it is undisputed that plaintiff "did not hit McCormack back during the incident." Dkt. No. 58 at ¶ 22.

Plaintiff has not identified a single instance in which she has stated that McCormack acted in self-defense. *See* Dkt. No. 64 at 6-7. Plaintiff asserts, without reference to a single document, that "Liberty ignores and is apparently asking this Court to preclude Bunnenberg from testifying consistent with the vast bulk of Bunne[n]berg's sworn deposition testimony and other sworn statements in the underlying case, and all of Bunnenberg's deposition testimony in this case." Dkt. No. 64 at 6. Plaintiff did not attach the depositions or "other sworn statements" to her response. *Id.* Upon the Court's review of the docket, it appears that Defendant provided eight pages of Plaintiff's testimony from her deposition in this action in support of its motion for summary judgment. *See* Dkt. No. 36-17. In opposition to Defendant's motion for summary judgment, Plaintiff provided fifteen pages of her testimony from her deposition in this action. *See* Dkt. No. 37-1. She provided four pages of her testimony from her deposition in the underlying action. *See* Dkt. No. 37-2. Neither party has provided the Court with Plaintiff's complete deposition testimony from either the underlying action or this action. Therefore, the Court cannot state with certainty whether Plaintiff ever testified that she was the aggressor, she hit McCormack, and/or that McCormack was acting in self-defense. However, from the excerpts that the Court has been provided, it appears that Plaintiff unequivocally repeated that she never hit

9

McCormack.  *See* Dkt. No. 52-8 at 7-9.  Plaintiff has not provided an example of contrary testimony.

For Plaintiff to take a position that she did hit McCormack would be inconsistent with the positions she repeatedly took in the underlying action as well in the pretrial stipulation stating that she never hit McCormack.  It was her position that she never hit McCormack that ultimately resulted in a consent decree in Plaintiff's favor.  *See In re 78-80 St. Marks Place LLC*, 648 B.R. 505, 521 (Bankr. S.D.N.Y. 2023) ("[T]he Supreme Court clearly found that taking a position for purposes of entering into a consent decree was enough to show that a position had been adopted prior") (citing *New Hampshire*, 532 U.S. at 751).  Because Plaintiff successfully advanced that position in the underlying action, she cannot testify contrary to that theory at trial.

It is true that in Plaintiff's deposition for this case, she stated that she was not sure about some things or could not remember aspects of the incident.  *See* Dkt. No. 37-1.  To the extent Plaintiff may not remember something, "[i]t is well-established that credibility determinations are to be made by the fact-finder . . . ."  *Scott v. Graham*, No. 16-CV-2372, 2018 WL 5257613, *23 (S.D.N.Y. Oct. 22, 2018) (citations omitted); *see also Li v. New Ichiro Sushi Inc.*, No. 20-1783-CV, 2021 WL 6105491, *5 (2d Cir. Dec. 21, 2021).

Plaintiff argues that "[n]ot only is [she] not so limited in her testimony at trial, the truth is that any and all such self-beliefs of Bunnenberg are inadmissible at trial, and if Liberty attempts to introduce [the] same at [trial] Bunnenberg will object."  Dkt. No. 64 at 7.  First, Plaintiff is not on Defendant's witness list.  *See* Dkt. No. 48 at 1; Dkt. No. 50 at 1.  Defendant does identify specific portions of Plaintiff's depositions which Defendant may seek to introduce.  *See* Dkt. No. 50 at 1-2.  However, Plaintiff lists herself as a witness on her witness list.  *See* Dkt. No. 61.  Plaintiff will not be permitted to testify in ways that are beneficial to her theory of the case, yet

avoid confrontation with prior testimony or statements she made which could be hurtful to her theory of the case.

It is true, as Plaintiff argues, that "'[i]n deciding whether a loss is the result of an accident, it must be determined, from the point of view of the insured, whether the loss was unexpected, unusual or unforeseen.'" *Liberty Mut. Ins. Co. v. Ho*, 289 A.D.2d 1051, 1051 (4th Dep't 2001) (quotation omitted); *see also* Dkt. No. 64 at 7. This does not, however, permit Plaintiff to testify contrary to stipulated facts or facts found by the Court.

Based on the foregoing, Defendant's motion *in limine* is granted to the extent that Plaintiff may not testify that McCormack did not repeatedly hit her in the face or that Plaintiff hit McCormack as such testimony would be contradictory to the statements made in the underlying action and those which have been found by this Court and stipulated to by the parties. *See* Dkt. No. 58 at ¶ 22; Dkt. No. 31 at 8-9.

**B.    Motion to Quash**

Plaintiff subpoenaed Defendant's trial counsel, Mr. Potashner, Mr. Brown, an employee at Liberty Mutual, McCormack's trial attorney Mr. Davey, and McCormack herself. *See* Dkt. No. 60-1. In an e-mail provided by Mr. Potashner, an attorney who has not appeared in this action, Jeff Gold, Esq. e-mailed Mr. Potashner stating that Mr. Potashner "made [himself] a witness being involved in negotiating the settlement agreement, and by telling Chris Benes that [Mr. Potashner] had communications directly with Lauren McCormack. With respect to Liberty, we want someone to authenticate all of its communications with Lauren McCormack and to authenticate the Policy, and those communications." Dkt. No. 60-2 at 2-3. Mr. Potashner responded, explaining to Mr. Gold that he has never spoken to McCormack and that Mr. Benes

11

did not object on authentication grounds to any of Defendant's evidence. *See id.* at 2. Defendant moves this Court to quash all four subpoenas for lack of notice, relevance, and/or distance.

Motions to quash a subpoena are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir.2003) (citation omitted); *see also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ("The determination of issues of burden and reasonableness is committed to the sound discretion of the trial court"). The Court applies a balancing test to determine whether a subpoena imposes an undue burden on the party from whom information is requested. *See Concord*, 169 F.R.D. at 49. Specifically, the Court must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it. Inconvenience alone does not justify quashing a subpoena that seeks potentially relevant testimony. *See id.*

   1. **Opposing Counsel**

The Second Circuit has stated that "depositions of opposing counsel are disfavored, . . . and would serve no useful purpose here in light of the information already supplied to" the other party. *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991); *see also New York Indep. Contractors All., Inc. v. Highway, Rd. & St. Const. Laborers Loc. Union 1010 of Dist. Council of Pavers & Rd. Builders of Laborer's Int'l Union of N. Am.*, No. 07-CV-1830, 2008 WL 5068870, *6 (E.D.N.Y. Nov. 24, 2008) ("A subpoena seeking to depose opposing counsel should be quashed when the attorney's role is limited to legal representation") (citation omitted). However, "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003). "Indeed, 'the request to depose a party's attorney must be weighed by balancing,

12

generally speaking, the necessity for such discovery in the circumstances of the case against its potential to oppress the adverse party and to burden the adversary process itself.'" *GLD3, LLC v. Azem Albra*, No. 21-CV-11058, 2024 WL 4471672, *5 (S.D.N.Y. Oct. 11, 2024) (quoting *Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001)). "Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Friedman*, 350 F.3d at 72; *see also Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (discussing these factors in determining whether opposing counsel can be subpoenaed to testify at trial).

Plaintiff has not enumerated a single reason that justifies subpoenaing Defendant's trial counsel to testify. It is a rare and exceptional circumstance that a court will permit opposing counsel to be subpoenaed and Plaintiff has not established such circumstances. During the Court's telephone final pretrial conference on November 5, 2024, Mr. Benes stated that he did not intend to call Mr. Potashner as a witness. Therefore, Defendant's motion to quash the subpoena issued to Mr. Potashner is denied as moot.

### 2. *Liberty Mutual Employee Stephen Brown, Sr.*

"For the purposes of evaluating a motion to quash a subpoena, the court need only determine that the requested evidence is relevant, and does not need to make determinations regarding admissibility." *Hickey v. Myers*, No. 09-CV-01307, 2013 WL 2418252, *6 (N.D.N.Y. June 3, 2013) (citing *U.S. v. Watchmakers of Switzerland Info. Ctr. Inc.*, 27 F.R.D. 513, 515 (S.D.N.Y. 1961)). "Since the threshold for establishing relevance is relatively low, '[p]rotection against undue liberality in the admission of evidence . . . is furnished by Rule 403.'" *Id.* (quoting *United States v. Mangan*, 575 F.2d 32, 45 (2d Cir. 1978)). "Under Rule 403, relevant evidence

may be excluded if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* (quoting FED. R. EVID. 403).

"Rule 45 requires a court to quash or modify a subpoena that 'subjects a person to undue burden.'" *Id.* (quoting FED. R. CIV. P. 45(c)(3) (A)(iv)). "The party seeking to quash the subpoena carries the burden of proving that a subpoena imposes an undue burden on a witness." *Id.* (citation omitted). "The moving party cannot meet its burden by merely asserting that compliance would be burdensome, but must also set forth the 'manner and extent of the burden and the probable negative consequences of insisting on compliance.'" *Id.* (quoting *Kirschner v. Klemons*, No. 99-CV-4828, 2005 WL 1214330, *3 (S.D.N.Y. May 19, 2005)). "In ruling on whether or not to quash a subpoena, the time and labor required to comply with the subpoena must be taken into consideration." *Id.* (quotation omitted).

Defendant argues that any testimony from a Liberty Mutual employee is irrelevant because Plaintiff did not object to any of Defendant's proposed exhibits on authenticity grounds and Liberty Mutual was not a witness to the underlying incident at issue. *See* Dkt. No. 60 at 2. Plaintiff has not responded to Defendant's motion.

The insurance policy is relevant to this action. However, the parties have stipulated to the pertinent language in the policy. *See* Dkt. No. 58 at ¶ 27. The only issue before the Court is whether the incident was an "accident" and whether the bodily injury was intended or expected, to which Mr. Brown is not purported to have any knowledge of. Having a Liberty Mutual Employee testify to the language in the policy would be a waste of time and a needless presentation of cumulative evidence. Accordingly, the Court finds that the balancing factors set forth in Rule 403

14

weigh in favor of quashing the subpoena served on Mr. Brown.  This aspect of Defendant's motion is granted.

### 3. Brian Davey, A Liberty Mutual Employee, and Lauren McCormack

#### a. Notice

Plaintiff filed her witness list with the Court on November 5, 2024, after her attorney, Mr. Benes, was ordered to do so by the Court during its final pretrial conference.  *See* Dkt. No. 61.  Mr. Benes did not previously file a witness list as required in the Court's trial order.  Plaintiff lists McCormack and her attorney in the underlying action, Mr. Davey.  *See id.*  Plaintiff's witness list indicates that Mr. Davey "was hired by Liberty Mutual, regarding his relationship as a representative of Liberty in the underlying manner, his refusal to all cooperation language in the Consent Stipulation and for other matters as it relates to Liberty Mutual's and/or Mr. Marshall Potashner's participation in the Consent Stipulation prior to signing by all parties."  *Id.*

Defendant received notice of Mr. Davey's subpoena from Mr. Davey on November 2, 2024.  *See* Dkt. No. 62 at 1.  The subpoena seeks the production of "[a]ll communications to/from Liberty Mutual Fire Insurance Company regarding Lauren McCormack[']s testimony."  Dkt. No. 62-1 at 2.  The subpoena was served on Mr. Davey on October 31, 2024.  *See id.*  It does not seek Mr. Davey's appearance at trial, despite him being on Plaintiff's witness list.  *See id.*; *see also* Dkt. No. 61.  On November 6, 2024, Defendant filed its third motion to quash, stating that a subpoena was served on Liberty Mutual Fire Insurance Company for "Liberty Mutual's entire claims file, including but not limited to copies of all statements taken from Lauren McCormack and any Examination Under Oath transcripts."  Dkt. No. 66-1.  Defendant argues that its counsel was not provided notice of the subpoena.  *See* Dkt. No. 60 at 1.

Federal Rule of Civil Procedure 45 requires that "[i]f the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." FED. R. CIV. P. 45(a)(4). "The purpose of the prior service requirement is to afford the opposing party the opportunity to object to the production called for by the subpoena." *Morocho v. Stars Jewelry by A Jeweler Corp.*, 345 F.R.D. 292, 293 (S.D.N.Y. 2024) (citing FED. R. CIV. P. 45(a) advisory committee's notes to 1991, 2007 & 2013 amendments). "Prior notice has been interpreted to mean 'that notice be given prior to the issuance of the subpoena, not prior to its return date.'" *Id.* (quoting *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789, 2016 WL 303114, *1 (S.D.N.Y. Jan. 25, 2016)).

Some courts have quashed subpoenas for the sole reason that a party did not comply with Rule 45's prior notice requirement. *See Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03-CV-5560, 2008 WL 4452134, *3 (S.D.N.Y. Oct. 2, 2008) (collecting cases). "The majority approach, however, requires that the aggrieved party demonstrate some form of prejudice resulting from the failure to provide advance notice." *Id.* (collecting cases); *see also Morocho*, 345 F.R.D. at 293 ("Failure to provide advance notice, however, is not always a basis to quash a subpoena. Many courts require the objecting party also to demonstrate prejudice").

Defendant has not argued that it has been prejudiced by the lack of notice. *See* Dkt. No. 62 at 2; Dkt. No. 66 at 2. Rather, Defendant has been able to move to quash the subpoenas which weighs against a finding of prejudice. Therefore, the Court will address the merits of Defendant's request to quash the subpoena served on Mr. Davey and Liberty Mutual Fire Insurance Company.

As to McCormack, Defendant argues only that the subpoena is improper for lack of notice. *See* Dkt. No. 62 at 1-2. Defendant does not argue that it has been prejudiced by the lack

16

of notice. *See id.* As the majority of courts have required an additional showing of prejudice, the Court will not quash the subpoena served on McCormack solely for Mr. Benes failure to comply with the notice requirement in Rule 45. This aspect of Defendant's motion is denied.

### b. Merits

As to Mr. Davey and Liberty Mutual Fire Insurance Company, Defendant argues that the subpoena is improper because it seeks documents which were not sought in discovery and seeks compliance outside of the allowable distance as set forth in Rule 45. *See* Dkt. No. 62 at 2-3; Dkt. No. 66 at 2. Defendant also contends that the documents are inadmissible hearsay, irrelevant, and constitute attorney work-product. *See* Dkt. No. 62 at 2-3; Dkt. No. 66 at 2.

"The law is clear that trial subpoenas cannot be used to obtain discovery not previously sought.'" *Patrick Baker & Sons Inc. v. St. Killan Candle Co. Ltd.*, No. 3:17-CV-0664, 2021 WL 9563172, *3 (D. Conn. Nov. 29, 2021) (quoting *Lumbermens Mut. Cas. Co. v. Flow Int'l Corp.*, No. 5:08-CV-865, 2013 WL 3190583, *5 (N.D.N.Y. June 21, 2013)). "Parties may not issue subpoenas as a means to engage in discovery after the discovery deadline has passed." *Id.* (quoting *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05-CV-8936, 2007 WL 3275918, *2 (S.D.N.Y. Nov. 5, 2007)) (additional quotation marks omitted).

"[T]rial subpoenas are appropriate only in certain circumstances, such as to secure an original document first disclosed during discovery, for the purposes of trial preparation, or for memory recollection." *Hickey v. Myers*, No. 09-CV-01307, 2013 WL 2418252, *5 (N.D.N.Y. June 3, 2013) (citing *Revander v. Denman*, No. 00-CV-1810, 2004 WL 97693, * 1 (S.D.N.Y. Jan. 21, 2004)). "When a party issues subpoenas after the discovery deadline has passed to obtain documents the party was aware of before the discovery cutoff date, the subpoenas and discovery requests should be denied." *Id.* (citing *McNerney v. Archer Daniels Midland Co.*, 164 F.R.D.

17

584, 588 (W.D.N.Y. 1995)). "Subpoenas calling for 'any and all records' are exactly the kind of 'shotgun' subpoenas that should not be issued on the eve of trial." *Id.* (citation omitted).

Plaintiff has not responded to Defendant's motions to quash. As such, Plaintiff has failed to provide any justification for seeking documents not previously sought through discovery. Plaintiff has been aware of Liberty Mutual's relationship with McCormack since 2013. *See* Dkt. No. 2 at ¶¶ 21-22. It is beyond this Court's comprehension why Plaintiff's counsel issued a subpoena on October 31, 2024, for Liberty Mutual's claim file related to McCormack and failed to do so during discovery. Plaintiff has already been sanctioned by the Court for counsel's failing throughout the discovery process and these subpoenas add insult to injury. *See* Dkt. No. 31. Because Plaintiff has not provided the Court with a single reason for her subpoena request, and it is inappropriate to use trial subpoenas to produce discovery, the Court grants Defendant's motion to quash the subpoena served on Mr. Davey and Liberty Mutual Fire Insurance Company.

If the failure to provide notice to Defendant's attorney and the inappropriate subject matter of the subpoenas were not enough, Plaintiff asks Mr. Davey to produce documents from Williston Park, New York, to Albany, New York. *See* Dkt. No. 62-1 at 2. A subpoena "may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(2)(A). Mr. Davey is 131 miles away from where he is commanded to produce the documents. The subpoena is improper on this additional ground and Defendant's motion to quash is granted.[2]

---

[2] Defendant also argues that the subpoena seeks documents that contain inadmissible hearsay and attorney work product. *See* Dkt. No. 62 at 3; Dkt. No. 66 at 2. Plaintiff acknowledges in her witness list that Mr. Davey was McCormack's attorney in the underlying action. *See* Dkt. No. 65 at ¶ 3. Plaintiff's subpoena to Mr. Davey seeks "[a]ll communications to/from Liberty Mutual Fire Insurance Company regarding Lauren McCormack[']s testimony." Dkt. No. 62-1 at 2. To

The Court also notes that as to the subpoena served on McCormack, Federal Rule of Civil Procedure 45 states as follows:

> A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
>
> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person or
>
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
>
>> (i) is a party or a party's officer; or
>>
>> (ii) is commanded to attend a trial and would not incur substantial expense.

FED. R. CIV. P. 45(c)(1). The address listed on the subpoena issued to McCormack, *see* Dkt. No. 65-5 at 1, is 113 miles from the Courthouse. However, McCormack lives within the state and Defendant has not established prejudice or a substantial burden through the command of McCormack's attendance at trial. As such, Defendant's request to quash the subpoena served on McCormack is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

---

request "all" communications is "exactly the kind of 'shotgun' subpoenas that should not be issued on the eve of trial." *Hickey*, 2013 WL 2418252, at *5. Plaintiff has not identified the specific documents she seeks to have produced. To the Court's knowledge, they have not yet been produced because of Defendant's motion to quash. As such, Defendant has not formally asserted any privilege. The Court has not reviewed any documents to determine whether they are privileged or contain inadmissible hearsay. Because the Court is granting Defendant's motion to quash the subpoena served on Mr. Davey for lack of notice and its inappropriate nature of seeking discovery at this late stage, the Court will not delve further into whether the documents contain hearsay or attorney work product.

**ORDERS** that Defendant's motion *in limine* (Dkt. No. 52) is **GRANTED** to the extent outlined in this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendant's motions to quash (Dkt. Nos. 60, 62, 66) are **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 6, 2024
      Albany, New York

*(signature)*
Mae A. D'Agostino
U.S. District Judge